RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0209p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

REPUBLIC BUILDING COMPANY, INC.; MICHAEL TORRES,

                *Plaintiffs-Appellants*,

    *v.*

CHARTER TOWNSHIP OF CLINTON, MICHIGAN,

                *Defendant-Appellee*.

> No. 22-1950

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:21-cv-12864—Gershwin A. Drain, District Judge.

Argued: June 13, 2023

Decided and Filed: September 7, 2023

Before: GILMAN, BUSH, and READLER, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Cindy Rhodes Victor, KUS RYAN, LLC, Auburn Hills, Michigan, for Appellants. Matthew J. Zalewski, ROSATI SCHULTZ JOPPICH & AMTSBUECHLER, PC, Farmington Hills, Michigan, for Appellee. **ON BRIEF:** Cindy Rhodes Victor, KUS RYAN, LLC, Auburn Hills, Michigan, for Appellants. Matthew J. Zalewski, ROSATI SCHULTZ JOPPICH & AMTSBUECHLER, PC, Farmington Hills, Michigan, for Appellee.

    BUSH, J., delivered the opinion of the court in which GILMAN, J., joined in full. READLER, J. (pp. 11–13) delivered a separate opinion concurring in part and dissenting in part.

———————————

**OPINION**

———————————

JOHN K. BUSH, Circuit Judge.  Plaintiffs Republic Building Company, Inc. and Michael Torres sought to develop condominiums at a property acquired from University Builders, Inc.  But there was one problem: they needed rezoning approval from the Charter Township of Clinton, Michigan (the Township).  After a protracted dispute over rezoning, plaintiffs sued the Township in Michigan state court to gain approval.  The state court entered a consent judgment that dictated the conditions for rezoning the property and completing the project.  Years later, after experiencing several setbacks, plaintiffs sought to amend the consent judgment, but the Township refused.  Plaintiffs then filed this suit in federal district court, alleging several constitutional violations as well as a breach-of-contract claim.  The Township moved to dismiss for lack of subject-matter jurisdiction, which the district court granted, finding plaintiffs' complaint to be a collateral attack on the consent judgment.  Contrary to the district court's opinion, it did not lack subject-matter jurisdiction, but dismissal was nevertheless proper for failure to state a claim based on res judicata.  We therefore AFFIRM.

I.

The events underlying this dispute began in 1999, when University Builders, Inc. purchased property located in the Township to build condominiums (the Project).  After this purchase,[1] plaintiffs requested that the Township Planning Commission rezone the property to allow the Project to move forward.  Though the Planning Commission initially recommended approving the request, the Township Board of Trustees denied it.  Plaintiffs responded by suing in Macomb Circuit Court.  That case ultimately settled, and plaintiffs and the Township agreed to a consent judgment, which the court finalized in December 2003.

The consent judgment permitted plaintiffs to proceed with the Project and outlined conditions for doing so.  Among those conditions, plaintiffs had to begin construction within six

———————————

[1]According to the Amended Complaint, Republic Building Company, Inc. is the successor entity to University Builders, Inc.

months, or the Township would be entitled to damages. Indeed, the Project needed to be completed in "strict conformity" with the consent judgment, unless the parties amended it. The consent judgment provided that any amendments needed approval from both parties and had to be in writing. Should conflicts arise concerning the development of the Project, the consent judgment would control. Notably, it provided that the Macomb County Circuit Court "retains jurisdiction to interpret and enforce the terms and conditions of this Consent Judgment."

In June 2005, plaintiffs purchased two additional parcels and, in 2006, submitted a request for conditional rezoning to amend the original rezoning approved in the consent judgment. The Township approved the request. But plaintiffs had yet to build anything at this point. And the 2008 recession did them no favors, causing them to halt the Project indefinitely. Plaintiffs allege that, some six years later, the Township's attorney contacted a developer in Macomb County to offer the property for purchase. Plaintiffs allege that they contacted the Township to object, claiming that the Township had no right to offer the property.

The story picks back up five years later, in 2017, when plaintiffs tried to sell the property to a third party. Plaintiffs requested an amendment to the consent judgment; the Township responded, telling plaintiffs that they were in default of the original consent judgment because they failed to start the Project within six months of the entry of the consent judgment. The Township allegedly threatened litigation, but none came.

In January 2018, plaintiffs found yet another potential buyer. Plaintiffs again sought amendment of the consent judgment, along with a new revised plan, which the Township denied. After much back and forth, the parties came close to an agreement—the Township would agree to an amendment in exchange for $73,000 in damages for plaintiffs' alleged breach of the consent judgment. Rejecting the Township's offer, plaintiffs decided to sue in federal district court.

In their complaint, plaintiffs claim that the Township violated their constitutional rights and breached the consent judgment when it declined to amend the consent judgment, thereby preventing plaintiffs from proceeding with the Project.

The Township moved to dismiss the case for lack of subject-matter jurisdiction. It argued that plaintiffs' complaint constitutes an improper collateral attack on the state-court consent judgment. The district court construed the Township's motion as a factual attack on subject-matter jurisdiction. Ultimately, the district court granted the motion, finding that the factual basis of plaintiffs' complaint was indeed the consent judgment. Thus, according to the court, the complaint amounted to an improper collateral attack on the consent judgment. The court also found that comity and federalism principles favored dismissal.

Plaintiffs timely appealed.

II.

We review de novo a district court's dismissal of an action for lack of subject-matter jurisdiction. *See Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 731 (6th Cir. 2022). When we find that the district court erred in dismissing a case based on Rule 12(b)(1), but that dismissal would have been proper under Rule 12(b)(6), we can affirm the district court on the alternative 12(b)(6) ground rather than remanding the case. *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010); *accord Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 424 n.2 (6th Cir. 2016); *see also Lindke v. Tomlinson*, 31 F.4th 487, 494 (6th Cir. 2022) ("While the parties here have contended, and the district court decided, that the lack of adversity is a jurisdictional issue, we could . . . affirm the district court on Rule 12(b)(6), not Rule 12(b)(1), grounds." (citing *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 569 (6th Cir. 2001)). As discussed below, we find that the district court dismissed the case improperly under Rule 12(b)(1). But dismissal was the proper result because, even though the district court had jurisdiction to hear the case, the complaint was barred by principles of res judicata. Fed. R. Civ. P. 12(b)(6). We review de novo claims potentially barred by res judicata. *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011).

Federal district courts have "original jurisdiction of all civil actions arising under the Constitution . . . of the United States." 28 U.S.C. § 1331. Plaintiffs brought three claims alleging federal constitutional-rights violations; namely, violations of the Due Process, Equal Protection, and Takings Clauses. R.4, PageID#79–84. Their last claim is a state-law breach-of-

contract claim. *Id.*, PageID#84–86. The district court, therefore, did have subject-matter jurisdiction over plaintiffs' alleged constitutional-rights violations. *Id.* And, because it had federal-question jurisdiction over some of plaintiffs' claims, the district court had discretion to exercise supplemental jurisdiction over the state-law claim. *See* 28 U.S.C. § 1367(a).

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817–818 (1976). The district court's conclusion that it lacked subject-matter jurisdiction to hear this case because the complaint constitutes an improper collateral attack on the state-court consent judgment was therefore an erroneous application of that doctrine.

A collateral attack is "[a]n attack on a judgment *in a proceeding other than on a direct appeal*." *United States v. Asakevich*, 810 F.3d 418, 423 (6th Cir. 2016) (alterations and emphasis in original) (quoting *Black's Law Dictionary* 318 (10th ed. 2014)). Such an attack "seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court." *Pratt v. Ventas, Inc.*, 365 F.3d 514, 519 (6th Cir. 2004). In this vein, collateral attacks exist where the relief sought would, in some way, overrule another court's ruling. *See Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 933 (8th Cir. 2000). Declining to entertain collateral attacks promotes judicial efficiency and order.

As the Fourth Circuit stated:

> The judicial system's need for order and finality requires that orders of courts having jurisdiction to enter them be obeyed until reversed, even if proper grounds exist to challenge them. A challenge for error may be directed to the ordering court or a higher court, as rules provide, but it may not be made collaterally unless it is based on the original court's lack of jurisdiction. These principles are firm and long standing.

*Spartan Mills v. Bank of Am. Ill.*, 112 F.3d 1251, 1255 (4th Cir. 1997) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 305–07 (1995)). Thus, unless a plaintiff alleges that the original court lacked jurisdiction over the case, a court should decline to entertain a collateral attack on a previous, valid judgment.

But this prohibition is not a jurisdictional one—it does not speak to the "court's authority to hear a given type of case" nor to "the extent to which a court can rule on the conduct of persons or the status of things." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). Instead, dismissal of a collateral attack is more in the nature of res judicata, *see Bus. Dev. Corp. of S.C. v. Rutter & Russin, LLC*, 37 F.4th 1123, 1127 & 1129 (6th Cir. 2022), which requires us to "look to the rules of res judicata in the forum that decided the first case." *See Talismanic Properties, LLC v. City of Tipp*, 742 F. App'x 129, 131 (6th Cir. 2018). In this case, that state is Michigan.[2]

Michigan courts have broadly applied res judicata to preclude "claims arising out of the same transaction that could have been litigated in a prior proceeding, but were not." *Sewell v. Clean Cut Mgmt., Inc.*, 621 N.W.2d 222, 225 (Mich. 2001). "A second action is barred when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Id.* (quoting *Dart v. Dart*, 597 N.W.2d 82, 88 (Mich. 1999)).

Res judicata applies where a consent judgment binds the parties from a previous action, or their privies, in a subsequent action. *See Baraga Cnty. v. State Tax Comm'n*, 645 N.W.2d 13, 16 (Mich. 2002). Consent judgments are binding contracts and, under Michigan law, the goal of the courts' "interpretation of any contract is to honor the intent of the parties." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 372 (6th Cir. 1998) (quoting *Rasheed v. Chrysler Corp.*, 445 N.W.2d 19, 29 n.28 (Mich. 1994)). In honoring consent judgments, Michigan courts have acknowledged their finality and applied res judicata to potential collateral attacks upon them. *See Foster v. Foster*, 983 N.W.2d 373, 380 (Mich. 2022); *Sewell v. Clean Cut Mgmt., Inc.*, 621 N.W.2d 222, 224–25 (Mich. 2001). This court has reached a similar

---

[2]The dissent claims that because the parties did not previously raise the issue of res judicata, we should remand the case for the district court to consider the preclusion analysis. It is true that we rarely resolve an appeal under Rule 12(b)(6) when the district court dismissed the case for lack of jurisdiction. However, the dissent recognizes that we may reach the merits of a complaint when the district court's analysis supports Rule 12(b)(6) dismissal, even if it claimed to be dismissing the case under Rule 12(b)(1). *See* Dissenting Op. at 2 (citing *Morrison v. Nat'l Austl. Bank*, 561 U.S. 247, 254 (2010)). We find that this case falls within that exception. Although the district court did not mention preclusion or res judicata in its analysis, the thrust of its opinion addressed the merits question of whether the consent judgment barred plaintiffs' claims under the collateral attack doctrine. The substance of the district court's opinion, despite its jurisdictional label, resolved merits issues and justifies our conducting a preclusion analysis.

conclusion in other contexts.  *See Talismanic Properties, LLC*, 742 F. App'x at 130 n.1 (acknowledging the preclusive effect of a settlement agreement where the court retained jurisdiction to enforce the agreement); *Blakely v. United States*, 276 F.3d 853, 866 (6th Cir. 2002) ("A consent judgment, which has been freely negotiated by the parties and has been approved by the court, has the full effect of final judgment for purposes of claim preclusion."); *Schlegel Mfg. Co. v. USM Corp.*, 525 F.2d 775, 778 (6th Cir. 1975) (per curiam) ("The consent decree represents more than a mere agreement between the parties, [because] [t]he District Court received the agreement, signed it and ordered it entered as a final judgment.").

Although our precedent has not addressed the precise issue of consent judgments that contain a "retaining-jurisdiction" provision, cases from sister circuits inform our analysis.  When a consent judgment contains a provision stating that a court retains jurisdiction over its interpretation and enforcement, that jurisdiction is presumed exclusive.  *See Flanagan v. Arnaiz*, 143 F.3d 540, 544 (9th Cir. 1998) (original court's jurisdiction over a settlement agreement deemed exclusive where the reviewing court identified a "retaining-jurisdiction" provision); *United States v. Am. Soc'y of Composers (In re Karmen)*, 32 F.3d 727, 731–32 (2d Cir. 1994) (consent judgment); *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 880–81 (11th Cir. 1989) (court order).  Though these cases involved federal courts retaining jurisdiction where a litigant sought to bring a collateral attack in state court, there is no reason why the same principle should not hold where a state court retains jurisdiction and the attempted collateral attack is in federal court.  *See Bates v. Twp. of Van Buren*, 459 F.3d 731, 734 (6th Cir. 2006) ("The 'Full Faith and Credit statute,' 28 U.S.C. § 1738, requires federal courts . . . to give state court judgments the same preclusive effect those judgments would have in the rendering state's courts.")

Here, the consent judgment contains a "retaining-jurisdiction" provision providing Macomb County Circuit Court jurisdiction over its interpretation and enforcement.  We therefore presume that the state court retains exclusive jurisdiction over the consent judgment.  *See Flanagan*, 143 F.3d at 540.  Thus, a separate lawsuit filed in federal district court would constitute a collateral attack on the consent judgment if that action required the district court in some way to interpret or enforce it.  *See id.*; *Asakevich*, 810 F.3d at 423; *Popp Telcom*, 210 F.3d at 933.

The question that remains, therefore, is whether plaintiffs' action requires the district court to interpret or enforce the consent judgment. Plaintiffs bring four counts against the Township: a Fourteenth Amendment Due Process violation, an Equal Protection violation, a Takings Clause violation, and and claim for state-law breach of contract. We conclude that consideration of plaintiffs' claims would require the district court to interpret or enforce the consent judgment.

For the Due Process claim, plaintiffs allege that the Township unconstitutionally deprived them of unspecified federally protected rights, the clearest being their "property rights and liberty interests." As for the Equal Protection claim, plaintiffs allege much of the same, adding that they "were treated adversely and differently than other property owners, who were similarly situated to plaintiffs," although their complaint does not identify any other property owners or how they were disparately treated. Third, plaintiffs allege an unconstitutional taking based on the Township "depriv[ing] plaintiffs of a valid property interest by its actions in refusing to allow plaintiffs to develop the Subject Property."[3] Finally, plaintiffs allege breach of contract based on, among other things, the Township's "refus[al] to honor its obligations under the Consent Judgment."

Adjudicating the breach-of-contract claim would clearly require the district court to interpret and enforce the consent judgment. A key feature of a breach-of-contract claim is seeking a court's enforcement of a contract where a party allegedly failed to uphold its obligations under the contract. *See Able Demolition v. Pontiac*, 739 N.W.2d 696, 699–701 (Ct. App. Mich. 2007). According to Michigan law, the consent judgment—a binding contract— would need to be interpreted to enforce it. *See Engler*, 146 F.3d at 372.

That leaves the constitutional claims. Plaintiffs desired first to build a condominium project on the property but, after initial roadblocks from the Township, needed to enter a consent judgment to begin. Then, after several setbacks, plaintiffs sought rezoning and several

---

[3]Earlier in the Amended Complaint, plaintiffs also allege the Township's attorney contacted a developer in Macomb County to advertise the property as for sale. In their appellate brief, plaintiffs change this allegation to say that the Township "list[ed]" the property for sale. Even if this might fairly be construed as an alleged taking, there is no alleged injury from the Township attorney's actions.

amendments to the consent judgment, including an amendment to allow a new buyer to develop the property. According to the amended complaint, the Township neither allowed any amendments nor issued necessary permits for construction. Rather, the Township informed plaintiffs that the consent judgment would need to be amended for the project to move forward. And, among other things, plaintiffs would have to pay the Township $73,000 in damages related to plaintiffs' alleged breach of the consent judgment.

All of plaintiffs' alleged constitutional violations stem from the Township's alleged refusal to "honor its obligations under the Consent Judgment to allow plaintiffs to develop the Subject Property." Throughout the amended complaint, plaintiffs reference the Township's failure to abide by the consent judgment, and they identify key provisions of the consent judgment, alleging that the Township failed to meet its obligations under them. Thus, adjudicating the constitutional claims would, at the very least, require the district court to interpret the consent judgment, with the obligations owed therein, if not enforce it. Perhaps plaintiffs are correct that the Township failed to meet its obligations under the consent judgment, but that is not for the district court to decide. The proper venue to interpret and enforce the consent judgment is Macomb County Circuit Court, not the federal courts. *See Flanagan*, 143 F.3d at 540.

Plaintiffs argue that, even if the factual basis of their claims stems from the consent judgment, the amended complaint does not amount to a collateral attack. Plaintiffs rely on *Striff v. Mason*, 849 F.2d 240, 245 (6th Cir. 1988), to argue that federal claims can have a factual basis in a consent decree and district courts can still fashion remedies despite the nature of the collateral attack. We find that argument unpersuasive. In *Striff*, the court *affirmed* the principle that where "examination of the substance of the claim reveals that a consent decree is implicated and its implementation would be adversely affected, the action is properly considered a collateral attack on the decree." *Id.* Based on that principle, this court affirmed the district court's

dismissal of most claims.  The sole reversal was based on the court deciding that the district court should have allowed the plaintiff to intervene in the *original action*.  *See id.*[4]

III.

For the foregoing reasons, we AFFIRM the district court on the alternative ground of failure to state a claim upon which relief can be granted.

---

[4]The holding in *Striff*—that third parties could not collaterally attack consent decrees—was overturned in *Martin v. Wilks*, 490 U.S. 755, 762–63 (1989).  That in turn was superseded by a federal statute as explained in *Landgraf v. USI Film Products*, 511 U.S. 244, 251 (1994).  Either way, these points are irrelevant because there is no *third party* seeking to enforce the consent judgment.

---

**CONCURRENCE / DISSENT**

---

CHAD A. READLER, concurring in part and dissenting in part. I agree with the majority opinion that the district court should have exercised its jurisdiction over plaintiffs' complaint. For today's purposes, however, I would stop there, leaving the res judicata issue to the district court on remand. It may be the case that plaintiffs' complaint is precluded. But the issue was not raised in the district court. Naturally, it also went unaddressed in the parties' appellate briefs. And when we inquired about the issue at oral argument, the point was affirmatively waived by the Township for purposes of this appeal. *See* Oral Arg. Tr. at 27:31–42 (Q: "Are you making a preclusion argument? Are you saying they're precluded from making certain arguments because of the prior—" A: "No, your honor. I'm not."). Respecting the parties' litigating choices, I would leave this unraised legal question to be answered another day.

\*          \*          \*

Both the district court and the majority opinion agree that plaintiffs' complaint should be dismissed. But their agreement ends there. The district court dismissed the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). The majority opinion, however, affirms that dismissal in accordance with Rule 12(b)(6). The difference between the two is no small matter. Rule 12(b)(1) concerns a court's power to hear a case, while Rule 12(b)(6) addresses a party's success in pleading a claim for which relief could be granted. We customarily do not resolve issues relating to the latter in an appeal arising from a judgment based solely on the former. *Adkisson v. Jacobs Eng'g Grp.*, 790 F.3d 641, 647 (6th Cir. 2015) (declining to proceed on appeal under Rule 12(b)(6) after a district court decided a case pursuant to Rule 12(b)(1)). After all, deciding previously unlitigated issues is "not in accordance with our traditional adversarial system." *Tingler v. Marshall*, 716 F.2d 1109, 1111 (6th Cir. 1983) (noting that such an approach is "not favored"); *see also United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1578–79, 1581 (2020) (holding that departures from the principles of party presentation constitute an abuse of

discretion absent "extraordinary circumstances"). Doing so often means determining a claim's merits before the parties have had a chance to give us their views on the matter.

True, there is one unique circumstance in which we resolve merits issues in an appeal from a jurisdictional dismissal. *See Morrison v. Nat'l Austl. Bank*, 561 U.S. 247, 254 (2010). That is when the district court mistakes a Rule 12(b)(6) "merits question" for a question of "the tribunal's power to hear a case," and thereby engages in a Rule 12(b)(6) analysis in purportedly dismissing the case under Rule 12(b)(1). *Id.* (cleaned up); *see also Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 424 & n.2 (6th Cir. 2016); *Teamsters Loc. Union 480 v. UPS, Inc.*, 748 F.3d 281, 286 (6th Cir. 2014); *Hoogerhide v. IRS*, 637 F.3d 634, 638–39 (6th Cir. 2011); *City of Highland Park v. EPA*, 817 F. App'x 42, 48 (6th Cir. 2020) ("Despite the Rule 12(b)(1) label, the district court's reasoning supports dismissal under Rule 12(b)(6)."). In that instance, a remand would simply make the district court do the same thing a second time. So where the district court has merely committed a labeling mistake and "nothing in the analysis of the [district] court[ ] turned on the mistake," we may proceed apace. *Morrison*, 561 U.S. at 254.

That was not the case here. The district court dismissed plaintiffs' complaint due to a perceived duty to decline subject matter jurisdiction over collateral attacks. To do so, it relied on the "collateral attack doctrine" articulated in *Pratt v. Ventas, Inc.*, 365 F.3d 514, 519 (6th Cir. 2004). *Pratt* involved a challenge to a Delaware bankruptcy court's judgment through litigation filed in Kentucky district court. *Id.* at 518. The dismissal in that case was "jurisdictional in nature" because the Kentucky court "could not properly exercise *appellate* review over" the Delaware bankruptcy proceedings. *Id.* at 518–19, 523 (emphasis added) (recognizing that Congress conferred jurisdiction on "the district court for the judicial district in which the bankruptcy judge is serving" (quoting 28 U.S.C. § 158(a))). In that sense, that "collateral attack doctrine" is jurisdictional because Congress has not given district courts appellate jurisdiction over other districts' bankruptcy courts. 28 U.S.C. § 158(a). As true as that may be, the district court here mistakenly read *Pratt* to establish a general rule for collateral attacks, and then paired that rule with a case in which a district court abstained from hearing a collateral attack, *Petoskey Inv. Grp. v. Bear Creek Township*, No. 5:03-cv-14, 2005 WL 1796130, at *9 (W.D. Mich. July

27, 2005), to conclude that federal courts "cannot hear claims" where there is a valid state court consent judgment.

That conclusion, one we all agree was incorrect, addressed "an issue quite separate from the question [of] whether the allegations [Republic] makes entitle[s it] to relief." *Morrison*, 561 U.S. at 254. At bottom, what drove the district court's analysis was a misunderstanding over what type of case may be heard in federal court. That is far afield from a true claim preclusion analysis. The res judicata principle operates to prevent a plaintiff from bringing "multiple suits litigating the same cause of action." *Adair v. State*, 470 Mich. 105, 121 (2004). Yet that issue was never addressed by the district court for the simple reason that it was never asked to do so. Indeed, the Township was explicit that it was not making a res judicata defense as part of its request for Rule 12(b)(1) dismissal, neither in the district court nor this one. All things considered, the issue simply is not before us for resolution.

That the district court proceedings are a poor platform from which to launch today's res judicata determination is further reflected by the procedural wrinkles in those proceedings. The district court considered the Township's Rule 12(b)(1) motion as a factual (rather than facial) attack on its subject matter jurisdiction, meaning the court had "broad discretion over what evidence to consider," including by "look[ing] outside the pleadings to determine whether subject-matter jurisdiction exist[ed]." *See Adkisson*, 790 F.3d at 647. This is a markedly different—and, I should note, less plaintiff-friendly—standard than the district court would apply in resolving a Rule 12(b)(6) motion. *Id.* (concluding that a dismissal according to a Rule 12(b)(1) factual attack should not be addressed at the appellate level for the first time under Rule 12(b)(6)). So even had the district court engaged in a true preclusion analysis, it would have done so using the wrong lens.

*        *        *        *        *

For these reasons, I would remand to the district court to allow the parties to address, for the first time, the merits of the potentially dispositive res judicata issue.